IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM MONTERIAL JONES, TDCJ #1971347, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-3284 |
| LORIE DAVIS, Director, Texas Department of Criminal Justice - Correctional Institutions Division, | § § § § | |
| Respondent. | § § | |

## MEMORANDUM OPINION AND ORDER

William Monterial Jones has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from two convictions entered against him in Harris County, Texas. Pending before the court is Respondent Lorie Davis's Motion to Dismiss With Brief in Support ("Respondent's Motion") (Docket Entry No. 18), arguing that his claims are procedurally barred. In response, Jones has filed Petitioner's Request for an Evidentiary Hearing With His Suggestions in Support (Docket Entry No. 16). Jones has also filed Petitioner's Traverse to Response to Order to Show Cause ("Petitioner's Traverse") (Docket Entry No. 19), which includes Supporting Exhibits (Docket Entry No. 20). After considering all of the pleadings, the state court record, and the applicable law, the court will grant Respondent's Motion and will dismiss this action for the reasons explained below.

# I.  Background

A grand jury in Harris County, Texas, returned two indictments against Jones in Case Nos. 1387546 and 1387547, charging him with aggravated robbery with a deadly weapon, namely a firearm, and unlawful possession of a firearm as a felon, respectively.[1]  Both indictments were enhanced for purposes of punishment with allegations that Jones had at least two prior felony convictions for robbery and for unlawful possession of a weapon as a felon.  On December 11, 2014, a jury in the 351st District Court for Harris County, Texas, found Jones guilty as charged in both indictments.[2]  After Jones acknowledged that the enhancement allegations were "true," the trial court sentenced him to concurrent 40-year terms of imprisonment in both cases.[3]

On direct appeal, Jones argued that the evidence was legally insufficient to support a guilty verdict because the State failed to prove his identity as the perpetrator of the armed robbery

---

[1]Indictment in Case No. 1387546, Docket Entry No. 13-2, p. 10; Indictment in Case No. 1387547, Docket Entry No. 13-3, p. 10.  For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Court Reporter's Record, vol. 5, Docket Entry No. 13-8, p. 13.

[3]Court Reporter's Record, vol. 6, Docket Entry No. 13-9, pp. 4-10; Judgment of Conviction by Jury in Case No. 1387546, Docket Entry No. 13-2, p. 134; Judgment of Conviction by Jury in Case No. 1387547, Docket Entry No. 13-3, p. 126.

beyond a reasonable doubt.[4] He also argued that the trial court erred by admitting speculative testimony from an investigator.[5] The intermediate court of appeals rejected both arguments and affirmed the conviction after summarizing the evidence presented against Jones at trial as follows:

> On the evening of September 23, 2012, Mohammad Aman, the complainant, and Nagy Aly were working at Mo's Food Mart when the store was robbed. Aman, the cashier, testified that a tall black male entered the convenience store, jumped onto the front counter behind the protective glass, shot Aman in the arm, and told him, "Okay. Now you're going to give me the money." Aman testified that the man was wearing a do-rag over his face, a t-shirt, and dark-colored pants. As Aman began to open the cash register, Aly, who had been working in the back of the store, approached the counter with his gun and told the assailant to drop his weapon. Aman testified that Aly shot the robber as he fled the store. Paramedics transported Aman to the hospital where a police officer took his statement. The officer then accompanied Aman to another hospital room to see if he could identify the man there as the robber. Aman told the officer that the man in the room was not the robber.

> On the night of the robbery, Aly, the night Stocker, heard someone near the cash register demand money from Aman. When Aly approached the front of the store, he saw a man behind the register with Aman. The robber saw Aly's gun and fired a shot at him. Aly then fired six shots at the man as he fled the store. Aly testified that as he was standing at the front door, he saw the robber run into the store's parking lot, fall down, and drop a hat and mask. Aly identified the hat and do-rag shown in State's Exhibits 15 and 16 as the hat and mask he saw the robber drop while fleeing. Aly did not identify the man in the hospital room as the robber.

---

[4]Appellant's Brief, Docket Entry No. 13-11, at 8.

[5]Id.

Deputy Langston Smart, with the Harris County Constable's Office, was dispatched to the convenience store following the robbery. After securing the scene, Deputy Smart collected a baseball cap and do-rag found in the parking lot outside the store. Deputy Smart also interviewed Aman and Aly who told him that the perpetrator was a thin, black male who had worn a do-rag over his face. Although the store had security cameras, they were not working on the night of the robbery.

Investigator Zachary Long, with the Robbery Division of the Harris County Sheriff's Office, was assigned as the lead investigator in the case.[6] Investigator Long went to Northwest Medical Center and interviewed Aman who told him that the robber, a black male, wore dark clothing, a ball cap, and a black cloth covering his face. Investigator Long then interviewed appellant who had been admitted with gunshot wounds to the same hospital. Appellant told him that he had been driving his car, a white Crown Victoria, when another vehicle ran him off the road at Airtex Boulevard near Interstate 45, and that the occupants shot at him while he ran away. He also told Investigator Long that he subsequently returned to his car and drove to his girlfriend's house.

Investigator Long testified that, based on his years of experience, appellant's version of events, and the fact that appellant arrived at the hospital dressed only in a t-shirt, white boxer shorts, and socks, he did not find appellant's statement credible. Investigator Long testified that he took Aman into appellant's hospital room but that Aman told him appellant was not the robber. Investigator Long stated that Aly likewise did not identify appellant as the robber. Investigator Long also interviewed Dominique Sampson, the person who brought appellant to the hospital. Sampson told Investigator Long that he had received a call from a friend asking him to pick up a friend who had been shot, and that he picked appellant up at a Popeye's Chicken restaurant off of Airtex and took him to the hospital. According to Sampson, appellant did not say anything during the ride to the hospital and only moaned. Investigator Long learned that a 1995 white Crown Victoria was later found abandoned in a moving lane of traffic near Airtex.

---

[6]At the time of trial, Investigator Long had worked in law enforcement for twenty-six years.

Lieutenant Anthony McConnell, with the Crime Scene Unit of the Harris County Sheriffs Office, conducted a gunshot residue test on appellant and obtained a voluntary buccal swab from him for purposes of DNA analysis. The results of the GSR test were negative.

Christy Smejkal, a DNA analyst with the Harris County Institute of Forensic Sciences, compared the DNA profiles from the baseball cap and the do-rag discovered in the store's parking lot to appellant's DNA profile obtained from his buccal swab. She testified that the DNA results from the do-rag revealed a mixture of DNA from two individuals, and that appellant was the major contributor. Smejkal further testified that the DNA profile from the baseball cap was consistent with appellant's DNA profile.

Jones v. State, Nos. 01-14-01-32-CR, 01-14-01033-CR, 2016 WL 672842, at *1-2 (Tex. App. — Houston [1st Dist.] Feb. 18, 2016) (footnote renumbered from original).[7] On July 27, 2016, the Texas Court of Criminal Appeals denied his pro se petition for discretionary review.[8]

Jones challenged his convictions by filing an Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("Application") with the trial court.[9] In his Application, Jones raised the following claims:

1. There was "no evidence" to support his conviction.

2. He was denied effective assistance of counsel when his defense attorney failed to (a) file a pretrial motion to suppress the DNA test results, (b) investigate his medical records, and (c) request the assistance of a DNA expert witness.

---

[7]Memorandum Opinion, Docket Entry No. 13-60, pp. 44-57.

[8]Notice, Docket Entry No. 13-24, p. 1.

[9]Application, Docket Entry No. 13-56, pp. 6-22.

3. He was denied effective assistance of counsel on appeal when his appellate attorney failed to raise ineffective-assistance claims against his trial counsel.[10]

The trial court entered findings of fact and concluded that Jones was not entitled to relief.[11]

The Texas Court of Criminal Appeals remanded the case for additional findings of fact on the claim that defense counsel failed to conduct an adequate investigation of the medical records, noting that Jones presented an affidavit from a nurse named Kelly Russell, who stated that Jones could not have run any distance due to his injuries, implying that he was not the perpetrator.[12] After obtaining additional briefing on this claim, the trial court found that the affidavit submitted by Jones was falsified.[13] The State presented an affidavit from Ms. Russell, stating that she did not prepare or sign the previous affidavit submitted by Jones, that she had no personal knowledge about his medical condition, and would

---

[10]See id. at 11-16.

[11]State's Proposed Findings of Fact, Conclusions of Law, and Order ("Findings and Conclusions"), Docket Entry No. 13-60, pp. 25-30.

[12]Order, Docket Entry No. 13-55, pp. 3-5. See Affidavit, Docket Entry No. 13-55, pp. 20-21.

[13]State's Proposed Findings of Fact, Conclusions of Law, and Order After Remand ("Findings and Conclusions After Remand"), Docket Entry No. 13-55, p. 30.

not have been qualified to testify if she had been subpoenaed as a witness.[14]

On August 22, 2018, the Texas Court of Criminal Appeals dismissed the Application, citing Jones for abuse of the writ.[15] In a written opinion issued in connection with that order, the Texas Court of Criminal Appeals found that Jones abused the writ by submitting false evidence and that he "waived and abandoned any contention" in connection with his claims for relief as a result:

> In his present application, Applicant contends, among other things, that his trial counsel rendered ineffective assistance because counsel failed to present medical records and interview and subpoena medical staff to show that Applicant was severely injured and would have been unable to run from the crime scene. This application, however, presents a more serious question. Applicant alleges that medical personnel was available to testify on Applicant's behalf. Applicant has provided an affidavit, purporting to be from a nurse, Kelly Russell, who states that Applicant could not have run any distance due to his injuries.
>
> However, Kelly Russell has filed an affidavit and denies preparing or signing the affidavit, stating that she is not a nurse, that she does not, in the course of her employment, draft affidavits providing medical analysis or provide expert opinions regarding medical conditions of patients, and that she does not have any personal knowledge of Applicant's medical condition, nor is she qualified to testify about his medical treatment. Based on these statements, the trial court has found that Kelly Russell did not prepare or sign the affidavit submitted by Applicant in the instant writ application. Therefore, the affidavit was falsified and/or was wholly the product of Applicant because said affidavit was not authored, executed, or signed by the purported affiant.

_____

[14]Affidavit of Kelly Russell, Docket Entry No. 13-55, pp. 18-19.

[15]Action Taken, Docket Entry No. 13-52, p. 1.

The writ of habeas corpus is not to be lightly or easily abused. Sanders v. U.S., 373 U.S. 1 (1963); Ex parte Carr, 511 S.W.2d 523 (Tex. Crim. App. 1974). We find that Applicant has abused The Great Writ by submitting false evidence. We deny relief on this application and cite him for abuse of the writ. By that abuse, Applicant has waived and abandoned any contention that he might have in regard to the instant conviction, at least insofar as existing claims that he could have or should have brought in the application. Ex parte Jones, 97 S.W.3d 586 (Tex. Crim. App. 2003); Middaugh v. State, 683 S.W.2d 713 (Tex. Crim. App. 1985); Ex parte Emmons, 660 S.W.2d 106 (Tex. Crim. App. 1983). Additionally, based on Applicant's submission of false evidence, we find that Applicant has filed a frivolous lawsuit.

Therefore, we instruct the Clerk of the Court of Criminal Appeals not to accept or file the instant applications for writ of habeas corpus, or any future application pertaining to these convictions unless Applicant is able to show in such an application that any claims presented have not been raised previously and that they could not have been presented in a previous application for a writ of habeas corpus. Ex parte Bilton, 602 S.W.2d 534 (Tex. Crim. App. 1980).

Ex parte William Monterial Jones, WR-85,603-03, 2018 WL 7502670, at *1 (Tex. Crim. App. Aug. 22, 2018) (per curiam).

Jones now contends that he is entitled to federal habeas relief from his conviction under 28 U.S.C. § 2254(d). Jones raises the same claims that he presented on state habeas corpus review, with the addition of a claim that his trial attorney was ineffective for failing to object to a prejudicial remark by the prosecutor.[16] Noting that the Texas Court of Criminal Appeals dismissed his state habeas Application for his abuse of the writ,

---

[16]Petition, Docket Entry No. 1, pp. 6-8. Because Jones is a pro se litigant, the court has construed all of his submissions under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam)

the respondent argues that federal review of his claims is barred by the doctrine of procedural default.[17]

## II.  Standard of Review

The federal habeas corpus standard of review requires a petitioner to first present his claims in state court and to exhaust all state court remedies through proper adjudication.  See 28 U.S.C. § 2254(b).  To satisfy the exhaustion requirement the petitioner must present his claims to the highest state court in a procedurally proper manner so that the state court is given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. See, e.g., O'Sullivan v. Boerckel, 119 S. Ct. 1728, 1732 (1999) (explaining that comity dictates that state courts should have the first opportunity to review a claim and provide any necessary relief).  When a state court declines to address a prisoner's federal claims because he has failed to meet a state procedural requirement, or state remedies are otherwise rendered unavailable by a prisoner's own procedural default, federal courts are barred from reviewing the claims.  See Coleman v. Thompson, 111 S. Ct. 2546 (1991); Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995).

---

[17]Respondent's Motion, Docket Entry No. 12, pp. 4-6.

## III. <u>Discussion</u>

## A. Federal Review is Procedurally Barred

As noted above, the Texas Court of Criminal Appeals denied the Application for state habeas corpus relief filed by Jones after finding that he abused the writ by submitting false evidence. The respondent argues, therefore, that federal review of the claims found in his state court Application is barred by the doctrine of procedural default.[18] Noting further that Jones attempts to add a claim for ineffective assistance of counsel that was not raised previously on state court review (regarding his defense counsel's failure to object to a prejudicial comment by the prosecutor) the respondent argues that this claim is also procedurally barred by the Texas abuse-of-the-writ doctrine because Jones cannot now return to court to raise this unexhausted claim.[19]

The Supreme Court has emphasized that, under the doctrine of procedural default, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." <u>Cone v. Bell</u>, 129 S. Ct. 1769, 1780 (2009) (citation and internal quotation marks omitted). It is well established that "[Texas' abuse-of-the-writ] doctrine is a valid state procedural bar foreclosing federal

---

[18]Respondent's Motion, Docket Entry No. 12, pp. 4-6.

[19]<u>Id.</u> at 2, 5-6.

habeas review." Moore v. Quarterman, 534 F.3d 454, 463 (5th Cir. 2008) (quoting Coleman v. Quarterman, 456 F.3d 537, 542 (5th Cir. 2006)); see also Hughes v. Quarterman, 530 F.3d 336, 342 (5th Cir. 2008) ("[The Fifth Circuit] has held that, since 1994, the Texas [abuse-of-the-writ] doctrine has been consistently applied as a procedural bar, and that it is an independent and adequate state ground for the purpose of imposing a procedural bar.") (citations omitted). Thus, the dismissal of Jones' state habeas application as an abuse of the writ constitutes an independent ground that is adequate to bar federal review. Because Jones cannot now return to state court to raise his unexhausted ineffective-assistance claim concerning his attorney's failure to object to a prejudicial comment by the prosecutor, this also qualifies as a default that bars federal review. See Nobles v. Johnson, 127 F.3d 409, 422-23 (5th Cir. 1997) (citation omitted).

In his response to Respondent's Motion Jones appears to argue that he did not commit a default for abuse of the writ because the second affidavit from Kelly Russell that was provided by the State, in which she disavowed executing the affidavit provided initially by Jones, was "not true."[20]  The Texas Court of Criminal Appeals found as a matter of fact, however, that the affidavit tendered by Jones in support of his state habeas Application was false. Ex parte William Monterial Jones, WR-85,603-03, 2018 WL 7502670, at *1

---

[20]Petitioner's Traverse, Docket Entry No. 19, pp. 11-14.

(Tex. Crim. App. Aug. 22, 2018) (per curiam). A state court's factual determinations are entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Jones has presented a variety of exhibits consisting of medical records, notes, and other documents from his defense attorney's file.[21] However, Jones does not present any proof, much less clear and convincing evidence, showing that the state court's finding that he submitted a falsified affidavit was incorrect. His abuse of the writ, therefore, constitutes a procedural default that bars review of the claims that he raised on state habeas corpus review unless he fits within an exception.

If a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). To fit within the fundamental-miscarriage-of-justice exception, a habeas petitioner who has defaulted his federal claims must show that, as a factual matter, "he did not commit the crime of conviction."

---

[21]Supporting Exhibits, Docket Entry No. 20, pp. 1-97.

<u>Fairman v. Anderson</u>, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted).

Jones does not demonstrate any cause for his default.[22] Because Jones has not established cause, his abuse of the writ will be excused only if he can show that federal review of his defaulted claims is necessary to prevent a fundamental miscarriage of justice. <u>See</u> <u>Fearance v. Scott</u>, 56 F.3d 633, 637 (5th Cir. 1995). This requires evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 106 S. Ct. 2616, 2627 (1986). To be credible a habeas petitioner must support a claim of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." <u>Schlup v. Delo</u>, 115 S. Ct. 851, 865 (1995). To prevail on such a claim a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id.</u> at 867.

None of the evidence presented by Jones satisfies the <u>Schlup</u> standard and he does not show that he is actually innocent. Instead, Jones appears to argue that he is innocent because the evidence presented against him at trial was insufficient to

---

[22]Jones appears to admit that he fabricated the affidavit from Russell by presenting a statement that she did not prepare or swear to under oath, believing he was authorized to do so. <u>See</u> Unsworn Declaration from Jones, Docket Entry No. 20, pp. 57-58 (explaining that he used Russell's signature from a blank business records affidavit that he received with copies of his medical records).

-13-

establish his guilt.[23]  This argument fails because "[a]ctual innocence means factual innocence and not mere legal insufficiency." United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999) (quoting Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998)).  Alternatively, for reasons set forth briefly below, Jones does not demonstrate that the evidence against him at trial was insufficient to establish his guilt beyond a reasonable doubt.  Accordingly, the court concludes that his claims are procedurally barred and that Respondent's Motion should be granted.

## B.  Jones' Challenge to the Sufficiency of the Evidence

Jones argues that his challenge to the sufficiency of the evidence should not be considered barred by the doctrine of procedural default.[24]  He contends that, even though he repeated a similar "no evidence" claim that was rejected on state habeas corpus review, he did raise a challenge to the sufficiency of the evidence on direct appeal that was rejected by the Texas Court of Criminal Appeals when it rejected his petition for discretionary review.[25]  To the extent that the claim was adjudicated on the merits during his direct appeal, Jones has not demonstrated that his challenge to the sufficiency of the evidence merits relief under the standard of review found in the Antiterrorism and

---

[23]Petitioner's Traverse, Docket Entry No. 19, pp, 29-34.

[24]Petitioner's Traverse, Docket Entry No. 19, p. 7.

[25]Id. at 8.

Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).

Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). This highly deferential standard "was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woods, 135 S. Ct. at 1376 (quoting Richter, 131 S. Ct. at 786-87).

On habeas corpus review of a state court conviction a challenge to the legal sufficiency of the evidence is governed by Jackson v. Virginia, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. See In re Winship, 90 S. Ct. 1068, 1073 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime with which he is charged."). This standard only requires that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 99 S. Ct. at 2789 (emphasis in original).

The Supreme Court has emphasized "that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict <u>Jackson</u> standard was unreasonable. <u>See</u> 28 U.S.C. § 2254(d)(1). Together, <u>Jackson</u> and the AEDPA require a "double dose of deference that can rarely be surmounted." <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim. <u>See Ylst v. Nunnemaker</u>, 111 S. Ct. 2590, 2594 (1991); <u>see also Wilson v. Sellers</u>, 138 S. Ct. 1188, 1193-94 (2018). That judgment was issued by the intermediate state court of appeals, which set forth the elements of the offense and concluded that there was more than sufficient evidence to support the conviction:

> In his first point of error, appellant contends that the evidence is legally insufficient to support his convictions. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he was the

perpetrator because (1) no witness identified him; (2) the DNA evidence from the baseball cap and do-rag was weak because Aman and Aly's testimony did not connect those items to appellant; and (3) the blood sample recovered from the crime scene excluded appellant, no fingerprints were taken, and the GSR test results were negative.

Here, Aman testified that the robber was wearing a do-rag over his face when he jumped over the counter, shot Aman in the arm, and demanded money. Aly testified that, after he fired his gun at the assailant, he stood at the front door as he watched the assailant run into the store's parking lot, fall down, and drop a hat and mask in the parking lot. When shown State's Exhibits 15 and 16, Aly identified the hat and do-rag shown in the photographs as the hat and mask he saw the robber drop. Smejkal testified that the DNA test results showed that appellant was the major contributor of the DNA found on the do-rag, and that appellant's DNA profile was consistent with the DNA found on the baseball cap. Thus, the State presented evidence connecting appellant to the discarded items found in the store's parking lot following the robbery. Moreover, the defense offered no alternative explanation as to how appellant's DNA ended up on the do-rag and baseball cap found at the crime scene. See Jones, 458 S.W.3d at 631–32 (finding evidence identifying defendant as robber sufficient where, among other things, no other testimony established connection between defendant and complainant to explain how complainant's DNA profile ended up on clothing that also contained defendant's DNA profile).

In addition to the DNA evidence, the State presented other circumstantial evidence supporting the jury's verdicts. Aly testified that he shot at the assailant six times while the assailant fled the store. Shortly after the robbery, appellant arrived at a nearby hospital with two gunshot wounds. According to Investigator Long, appellant told him that, after he was carjacked on Airtex Boulevard, he returned to his car and drove to his girlfriend's house. However, the investigation subsequently revealed that the car was towed as an abandoned vehicle from a moving lane of traffic near Airtex. Sampson also told Investigator Long that he picked appellant up at a Popeye's Chicken off of Airtex and took him to the hospital. See Curry, 30 S.W.3d at 406 (noting that reviewing courts resolve inconsistencies in evidence in favor of verdict).

> In light of the DNA evidence, appellant's gunshot wounds,
> and the discovery of appellant's abandoned car, it was
> reasonable for the jury to infer that appellant committed
> the charged offenses. Viewing the evidence in the light
> most favorable to the verdict, we hold that the State
> presented sufficient evidence for a reasonable fact
> finder to conclude beyond a reasonable doubt that
> appellant was the armed robber of Mo's Food Mart. We
> overrule appellant's first point of error.

Jones v. State, Nos. 01-14-01-32-CR, 01-14-01033-CR, 2016 WL

672842, at *3-4 (Tex. App. — Houston [1st Dist.] Feb. 18, 2016,

pet. ref'd). In reaching this conclusion the court of appeals

expressly followed the legal standard articulated in Jackson for

evaluating challenges to the sufficiency of the evidence. See id.

at *2 (citing Jackson v. Virginia, 99 S. Ct. 2781 2789

(1979)(citations omitted)).

As noted by the state court, Jones was identified as the

suspect because his DNA was recovered from items discarded by the

perpetrator at the scene and he sustained gun-shot wounds

consistent with those inflicted by one of the store clerks. None

of the evidence offered by Jones refutes any of the state court's

findings of fact, which are presumed correct on federal habeas

review. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 101 S. Ct.

764, 769 (1981) (observing that the presumption of correctness

"applies to factual determinations made by state courts, whether

the court be a trial court or an appellate court"). Under these

circumstances, the state court's well-reasoned opinion is entitled

to "great weight" on federal habeas review. Parker v. Procunier,

763 F.2d 665, 666 (5th Cir. 1985) (citing <u>Jackson</u>, 99 S. Ct. at 2791, n.15); <u>see</u> <u>also</u> <u>Callins v. Collins</u>, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.").

To the extent that Jones asks this court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry exceeds the scope of review permitted under the <u>Jackson</u> standard. <u>See</u> <u>Schlup v. Delo</u>, 115 S. Ct. 851, 868 (1995) ("[U]nder <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of review."). A federal habeas corpus court may not substitute its view of the evidence for that of the fact-finder. <u>See</u> <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995). Under the <u>Jackson</u> standard "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Jones has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under <u>Jackson</u>. Therefore, Jones is not entitled to federal habeas corpus relief on his claim that the evidence was insufficient to support his conviction. Because his remaining claims are procedurally barred due to his misconduct on state habeas review, the court will grant Respondent's Motion and

dismiss this action without considering his ineffective-assistance claims.

### IV. Petitioner's Request for an Evidentiary Hearing

Jones requests an evidentiary hearing on the merits of his claims.[26] The decision whether to hold an evidentiary hearing on federal habeas review is governed by 28 U.S.C. § 2254(e)(2). Where an applicant has "failed to develop the factual basis of a claim in State court proceedings," the federal habeas corpus court "shall not hold an evidentiary hearing" on the claim unless the applicant shows that:

(A) the claim relies on —

 (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

 (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Jones fails to show that he is entitled to a hearing under this statute. Accordingly, his request for an evidentiary hearing will be denied.

---

[26]Petitioner's Request for an Evidentiary Hearing With His Suggestions in Support, Docket Entry No. 16, pp. 1-11.

## V.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.   A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not debate whether the petitioner states a valid claim for relief or that the court's procedural ruling was wrong.  Because the petitioner does not otherwise demonstrate that his claims could be resolved in a

different manner, a certificate of appealability will not issue in this case.

## VI. Conclusion and Order

The court **ORDERS** as follows:

1. Respondent Lorie Davis's Motion to Dismiss (Docket Entry No. 12) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by William Monterial Jones (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3. Petitioner's Request for an Evidentiary Hearing (Docket Entry No. 16) is **DENIED**.

4. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 22nd day of April, 2019.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE